UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-60315-WPD

GENIE-S INTERNATIONAL LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

    Defendants.
_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, GENIE-S INTERNATIONAL LTD. ("GENIE-S" or "Plaintiff"), by undersigned counsel and pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C § 1651(a), respectfully moves on an *ex parte* basis for entry of a temporary restraining order, including a temporary injunction, a temporary asset restraint, expedited discovery, and upon expiration of the temporary restraining order a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A to the Complaint ("Defendants"). In support, Plaintiff respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.**    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff brings this action against the Defendants identified on Schedule A to the

Complaint for utility patent infringement. As the Complaint alleges, Defendants promote, advertise, market, distribute, offer for sale, sell, and/or import products in connection with utility patents to which Plaintiff has been granted licenses and rights to enforce (the "Infringing Products"),[1] through various fully interactive commercial Internet websites operating under at least the Defendant Internet Stores and online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run an illegal infringement operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores that appear to be selling genuine products but instead sell unauthorized and unlicensed Infringing Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between the Defendants and suggesting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their illegal operation.

This Court has personal jurisdiction over Defendants because each Defendant targets Florida residents and has offered to sell, and on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Florida. Specifically, Defendants are reaching out to do business with Florida residents by operating one or more commercial, interactive Internet Stores through which Florida residents can purchase products being sold in connection with Plaintiff's licensed patents. Defendants directly target unlawful business activities toward consumers in Florida, cause harm to Plaintiff's business within

---

[1] Plaintiff has been authorized by licensors Beauty Union Global Limited and Dongguan Yixin Magnetic Disk Co. Ltd to exercise all IP rights in and to the patents.

this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon GENIE-S' reputation and goodwill by using their commercial, interactive Internet stores to sell and/or offer for sale, unlicensed Infringing Products utilizing Plaintiff's licensed patents.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Infringing Products; (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting; and (3) authorizing expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to Defendants' infringement and Defendants' financial accounts.[2]

Given the covert nature of offshore illegal activities and the vital need to establish an economic disincentive for such activities, courts regularly issue such orders. *See, e.g.*, *Max'is Creations Inc. v. The Individuals, et al.*, 2023 WL 2388614 (S.D. Fla. Feb. 7, 2023) (order granting relief requested here); *Lead Creation Inc. v. Partnerships et al.*, 2023 WL 1993971 (M.D. Fla. Feb. 14, 2023) (same).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establish that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. GENIE-S is a licensee of the granted patent applications, and GENIE-S is the distributor of genuine GENIE-S Products ("GENIE-S Products"). Defendants' Infringing

---

[2] Plaintiff filed a motion to authorize service by electronic publication on February 19, 2025 [DE 5].

Products, which utilize the technology claimed in Plaintiff's patents, is causing consumer confusion.  In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to GENIE-S' reputation.  Monetary damages are inadequate to compensate Plaintiff for these damages.  This makes injunctive relief particularly appropriate in this matter.  Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products.

Indeed, 35 U.S.C. § 283 authorizes this Court to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order.  Finally, a prejudgment asset freeze is also proper since Plaintiff seeks equitable relief and a reasonable royalty measured by Defendants' profits.  *See Max'is Creations*, 2023 WL 2388614, at *4 (ordering restraint of assets where plaintiff sought reasonable royalty for patent infringement).

## II. STATEMENT OF FACTS

### A. Plaintiff's Intellectual Property and Products

GENIE-S has been granted licenses and rights to enforce several U.S. Patents covered by at least U.S. Patent Nos. 8,079,388 B2 and 8,881,775 B2 (the "Beauty Union Global Limited Utility Patents") and 9,738,437 B2, 8,978,938 B2, and 9,522,403 B2 (the "Dongguan Yixin Magnetic Disk Co. Ltd Utility Patents") (collectively the "GENIE-S Patents").  *See* Declaration of Pamela Hui ("Hui Decl."), ¶ 5.  GENIE-S is a leading supplier and manufacturer of innovative GENIE-S

products such as TRAVALO and Perfume Pod, which encompass proprietary technology claimed in at least a portion of the GENIE-S Patents, and has earned an international reputation for quality, reliability, and value. The GENIE-S Products are meant to be exclusive. *Id.*, ¶ 31. Since their introduction, the GENIE-S Products have been the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers. Plaintiff's promotional efforts include, for example, substantial print media, social media sites, and advertising campaigns handled by its licensed distributors. *Id.*, ¶ 7. Plaintiff is also credited for many breakthroughs that have occurred in the industry, including its GENIE-S products, and has won many prestigious awards in relation to the GENIE-S Products, including the Watsons HWB Awards, Beauty Challenger Awards, Buyer's Forum: Frontier Mediazone's Most Valuable Services Awards in Hong Kong, and Red Dot Award. *Id.*, ¶ 6. GENIE-S is the official source of GENIE-S Products in the United States. *Id.*, ¶ 7. The success of the GENIE-S Products has resulted in their significant infringement. *Id.*, ¶ 8.

      B.      **<u>Defendants' Unlawful and Deceptive Activities</u>**

Plaintiff has identified numerous fully interactive commercial Internet stores operating under the online marketplace accounts identified in Schedule A to the Complaint, which sell Infringing Products that utilize the technology of and inventions claimed in at least a portion of the GENIE-S Patents, from foreign countries to consumers in this District. Hui Decl., ¶¶ 9–15 and Ex. 2 thereto.

Defendants typically facilitate sales by designing the Defendant Internet Stores so they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GENIE-S Products. Hui Decl., ¶ 19. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.

5

*Id.* The Defendant Internet Stores often include images and design elements that make it difficult for consumers to distinguish counterfeit sites from an authorized website. *Id.*, ¶¶ 20. Plaintiff has not licensed or authorized Defendants to use the GENIE-S Patents, and none of the Defendants are authorized retailers of genuine GENIE-S Products. *Id.*, ¶ 21.

Further, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.*, ¶ 23. For example, many Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete or contain randomly typed letters. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Defendants use these common tactics to conceal the full scope of their massive illegal operation, and to avoid being shut down. *Id.*

Despite operating under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. Hui Decl., ¶ 24. For example, many of the Defendant websites have virtually identical layouts. *Id.* In addition, Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being infringing products, suggesting that the Infringing Products originate from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, user-defined variables, domain redirection, lack of contact information, and the use of the same text and images. *Id.*

**III.     ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to GENIE-S. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a temporary restraining order, ordering, among other things, expedited discovery regarding Defendants and the freezing of Defendants' assets. Without this relief requested, Defendants' unlawful activities will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods utilizing the technology of and inventions claimed in at least a portion of the GENIE-S Patents via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the GENIE-S Patents and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will move any assets from U.S.-based bank accounts, including PayPal accounts, and take other steps to evade enforcement, such as redirecting traffic to other websites they control. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.").

As a result, Plaintiff respectfully requests that this Court issue the requested *ex parte*

temporary restraining order. This Court has original subject matter jurisdiction over the utility patent claims pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 281, 282, 283, 284, 285, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. This Court May Exercise Personal Jurisdiction Over Defendants.

Personal jurisdiction exists over Defendants in this Judicial District pursuant to Fl. Stat. § 48.193 (1)(a)(1)–(2) and Fl. Stat. § 48.193 (1)(a)(6) and/or Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Infringing Products from and offer shipping to Florida addresses located in this Judicial District. Indeed, the Southern District of Florida regularly exercises personal jurisdiction over websites offering for sale and selling of infringing products to Florida residents over the internet. *Chanel, Inc. v. Individuals et al.*, Case No. 21-cv-62335-WPD (S.D. Fla. Nov. 16, 2021) (preliminary injunction order after granting TRO); *The North Face Apparel Corp., et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193 (S.D. Fla. Jan. 28, 2022) (same).

As detailed in the Complaint and in the Hui Declaration, Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Hui Decl., ¶ 15. In fact, Exhibit 2 to the Hui Declaration contains copies of exemplary screenshots from the Defendant Internet Stores reflecting the marketing and ability to order Infringing Products to the Southern District of Florida, and proof of orders actually placed and accepted by various Defendants to the Southern District of Florida. For that reason alone, this Court can exercise personal jurisdiction over Defendants.

### B. Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order is identical to the standard for

granting a preliminary injunction. *Zhou v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. 22-24013-CIV, 2023 WL 2388608, at *2 (S.D. Fla. Jan. 24, 2023). To obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes each factor.

      **C.**      **Plaintiff Will Likely Succeed on its Utility Patent Infringement Claim.**

Likelihood of success on the merits in patent infringement claims requires a showing that the patent is being infringed and that it would survive any challenge to validity. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, at 1376 (Fed. Cir. 2009). The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. §271(a).

In this case, Plaintiff GENIE-S is a licensee of the GENIE-S Patents, which are valid, subsisting, and in full force and effect. Hui Decl.. ¶ 5. Plaintiff has submitted extensive documentation, attached as Exhibit 2 to the Hui Declaration, that shows numerous examples of Defendants making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the same products that infringe directly and/or indirectly the GENIE-S Patents. Plaintiff has not licensed nor authorized Defendants to use the GENIE-S Patents, and none of the Defendants are authorized retailers of genuine GENIE-S Products. *Id*., ¶ 21. Defendants' intentional utilization of the Plaintiff's Patents without license or authorization

constitutes willful infringement.

With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence"—if presented—"recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). Accordingly, the Court need not resolve validity at this early stage. *Id.* At this point, no challenges have been made, so the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge.

### D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

Plaintiff has no adequate remedy at law in light of the irreparable harm Defendants' continued infringement is causing Plaintiff, and Plaintiff will continue to be irreparably harmed absent preliminary relief enjoining Defendants' unlawful infringement in the future. In patent cases such as this, irreparable harm is presumed. *See Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.").

Defendants' unlawful use of the technology claimed in at least a portion of the GENIE-S Patents in their Infringing Products is damaging Plaintiff's reputation with consumers and in the industry and eroding the value of, and potentially the market for, the real GENIE-S Products. Hui Decl., ¶¶ 27–31. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff.

Because Defendants have and continue to irreparably harm Plaintiff through diminished

goodwill and damage to GENIE-S' reputation, monetary damages are inadequate to compensate Plaintiff.

### E. The Balancing of Equities Tips in Plaintiff's Favor.

The third element, "that the threatened injury outweighs the harm the relief would inflict on the non-movant," is satisfied here. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Here, the balance of equities favors entering a TRO.

Plaintiff faces a hardship "from loss of sales and its inability to control its reputation" because of Defendants' infringement. *See Daka Research, Inc. v. Individuals et al.*, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *affirmed and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023).

Defendants, on the other hand, "face no hardship if they are prohibited from the infringement of Plaintiff's Patents, to which they have no right." *Id.* Defendants have been profiting from the sale of Infringing Products. The GENIE-S Products are widely recognized, and exclusively associated by consumers, the public, and the trade as being products sourced from GENIE-S. Hui Decl., ¶¶ 7–8. As willful infringers, this Court should afford little equitable consideration due to any potential harm caused to Defendants by a TRO. Any such harm would be self-inflicted. Courts have previously refused to assign harm to defendants who assume such a risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("[T]he preliminary record suggests that [the defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [the plaintiff's] patent."). Thus, equity requires that Defendants cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest.

The public interest favors the issuance of an injunction "to prevent consumers from being

misled by Defendants' products, and potentially harmed by their inferior quality." *See Daka Research, Inc. v. Individuals et al.*, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *affirmed and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023).  The public is currently under the false impression that Plaintiff has granted a license or permission to Defendants with respect to the GENIE-S Patents, and that those products are therefore reliable and safe.  In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

Additionally, an injunction in these circumstances is in the public interest because it incentivizes inventors and innovators to continue developing new products and patenting inventions without the fear of an inability to enforce those patents or stop infringers.  Public policy favors the protection of rights secured by valid patents.  *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015).  "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention."  *Id*. at 647.  As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products, and allowing Defendants to continue their infringement chills the development of new products and patenting inventions.  The balance of equities therefore tips decisively in Plaintiff's favor.

**IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Patent Act authorizes courts to issue injunctive relief "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the

adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.

Plaintiff requests a temporary restraining order requiring the Defendants to immediately cease all use of the GENIE-S Patents. Such relief is necessary to stop the ongoing harm to the GENIE-S Patents and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the GENIE-S Patents. The need for *ex parte* relief is magnified in today's global economy where infringers can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants."). Moreover, federal courts have long recognized that civil actions against infringers—whose very businesses are built around the deliberate misappropriation of rights and property belonging to others—present special challenges that justify proceeding on an *ex parte* basis. *See Louis Vuitton Malletier v. beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Nov. 28, 2018) (order granting *ex parte* application for temporary

restraining order and restraining defendants' assets and defendants' related assets).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to the payment of reasonable royalties and lost profits to Defendants from sales of Infringing Products is not impaired. If such a restraint is not granted in this case, Defendants are likely to fraudulently transfer financial assets to overseas accounts. Specifically, it appears that the Defendants in this case hold most of their assets in foreign countries, making it easy to conceal assets, which will bar Plaintiff from the possibility of relief.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Max'is Creations*, 2023 WL 2388614, at *4 (ordering restraint of assets where plaintiff sought equitable relief and reasonable royalty for patent infringement); *Lead Creation*, 2023 WL 1993971, at *5 (S.D. Fla. Feb. 14, 2023) (ordering asset restraint where plaintiff sought equitable relief for patent infringement); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, and in accordance with the Patent Act, Plaintiff will be entitled to the payment of reasonable royalties and the profits earned by Defendants throughout the course of their illicit scheme. 35 U.S.C. § 284. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff. *See SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to freeze all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

The Eleventh Circuit has previously upheld the Court's authority to restrain assets, particularly when defendants have the ability to eliminate their evidentiary trails by conducting their business entirely over the Internet. *See e.g., Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995). "Requesting equitable relief [such as this] 'invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to ensure the availability of permanent relief.'" *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)). Furthermore, this Court has held that it may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *S.E.C. v. Lauer*, 445 F. Supp. 2D 1362, 1364 (S.D. Fla. 2006) (upholding temporary freeze of all of defendant's assets to maintain the status quo).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' conduct, and that, unless Defendants' assets are restrained, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the grant of an injunction preventing the transfer of Defendants' assets is proper.

  **C.** **<u>Expedited Discovery Is Appropriate.</u>**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Plaintiff

respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful illicit operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order. Indeed, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *AdMarketplace, Inc. v. TeeSupport Inc.,* 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

Plaintiff's undersigned counsel is aware that the third-party marketplaces and payment services contemplated in the proposed order have cooperated with intellectual property owners in prior cases and under similar circumstances and are accustomed to doing so as part of their business operations. These third parties can comply with these expedited discovery requests without undue burden.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Rule 65(c) gives courts wide discretion to set the bond amount, and even to dispense with any bond requirement. Fed. R. Civ. P. 65(c); *see also BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005) ("[I]t is well-established that the amount of security required by the rule is a matter within the discretion of the trial court ...[, and] the court may elect to require no security at all."); *Smiley Co. SPRL v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. 23-61229-CIV, 2023 WL 6309361, at *4 (S.D. Fla. Aug. 31, 2023) (exercising discretion not to require bond in case involving counterfeiting).

Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice.

## VI. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiff respectfully request the Court provide a copy of the temporary restraining order to Plaintiff's counsel via email at lsalomon@bsfllp.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants proper notice of the order and any subsequent hearing date.

Dated: February 26, 2025                                   Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8450
lsalomon@bsfllp.com

*Counsel for Plaintiff GENIE-S INTERNATIONAL LTD.*

## **CERTIFICATION**

I hereby certify that Defendants were not given notice because notice should not be required. If Defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions, which would frustrate the purpose of the underlying law and would interfere with this Court's ability to grant relief.

Dated: February 26, 2025                          By: */s/ Leigh Salomon*
                                                                    Leigh Salomon