UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-60315-WPD

GENIE-S INTERNATIONAL LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff, GENIE-S INTERNATIONAL LTD., ("Plaintiff"), by and through its undersigned counsel, requests the entry of final default judgment against Defendants, the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified on the attached Amended Schedule A (collectively, "Defaulting Defendants").[1] In support, Plaintiff submits the following Memorandum of Law.

---

[1] The Schedule A to Plaintiff's [Proposed] Order on Motion for Entry of Final Default Judgment, filed concurrently with Plaintiff's Motion for Entry of Default Judgment, has been amended to remove several Defendants that were included on the Schedule A to Plaintiff's Motion for Clerk's Entry of Default [DE 41] for whom Plaintiff initially intended to seek default against but no longer intends to. Accordingly, Plaintiff is not seeking default against Defendants aesthestify (DOE 8); Cheeroyal (10); EMISSU (DOE 13); faraway from (DOE 15); HNJZX (DOE 19); HYX168 (DOE 20); KJHD (DOE 23); MOFENGFENG (DOE 24); new beat for dear (DOE 25); QIBANHUA MAKEUP TOOLS (DOE 26); QMET (27); QMOEH (28); SCOLAND (DOE 29); TF Pedck (DOE 33); VOVOU US (34); wouldRather (DOE 36); yakify (DOE 37); YOCASII (DOE 39); YXGJ (DOE 40); zhuotianshan (42); daniel_wreight (DOE 45); noachy-0 (DOE 53); travndctechnolo-0 (DOE 56); All Glory (DOE 59); Around the corner (61); AYX Life-Home Store (DOE 63); CHENKAIRUI (DOE 67); CuiNa fashion (68); daunximy (DOE 70); DIDABEAR (DOE 71);

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

Plaintiff filed its Complaint against Defendants for utility patent infringement under 35 U.S.C. § 271 [DE 1].  The Defaulting Defendants are in default, and the prerequisites for a default judgment have been met.  Plaintiff therefore seeks default judgment finding the Defaulting Defendants liable for utility patent infringement.  As part of the judgement, Plaintiff requests entry of a permanent injunction and an award of damages for Defaulting Defendants' willful infringement pursuant to 35 U.S.C. §§ 271, 284.  Plaintiff also requests the Court order the listings and associated images infringing Plaintiff's patents, currently being used by Defaulting Defendants, be permanently removed to ensure the associated e-commerce marketplace stores may no longer be used as a means for selling products infringing Plaintiff's intellectual property rights.

**II.     STATEMENT OF FACTS**

    **A.      Plaintiff's Rights**

Plaintiff has been granted licenses and rights to enforce several U.S. Patents covered by at least U.S. Patent Nos. 8,079,388 B2 and 8,881,775 B2 (the "Beauty Union Global Limited Utility Patents") and 9,738,437 B2, 8,978,938 B2, and 9,522,403 B2 (the "Dongguan Yixin Magnetic

---

Domey (72); dongfanggouwu (DOE 73); E-Travelling (DOE 76); fr (DOE 80); GlobalBagSpot (81); happy home (DOE 85); HONG HUA (87); Horizontal trade (DOE 88); hui yi (90); HXH (DOE 91); jiamaiwen (DOE 93); Jin wu (DOE 94); JinhuaTH (95); jiyingmaoyi (96); JORY Store (DOE 97); Magic Star (DOE 102); MDHAND (103); nayangmeili (DOE 106); Park Lan daily necessities (108); qibangdianzi (DOE 111); Spring pomelo (DOE 118); TravelLite Gear (119); weizeG (120); Y.T (DOE 121); yueguangbaohexb (DOE 124); yunhe01(125); YUYU General Store (DOE 126); YW Jingheng (127); YWchuangwei (DOE 128); YWDAIWO (129); zhiyumaoyi (DOE 133); zugexb (DOE 134); An Liang Be (135); fashion Bag monopoly (137); SAIZOU (142); TopAdlib (DOE 143); Fabiurt (DOE 146); JPyou (DOE 149); Night Theater (DOE 154); Ru Zhou Shi Guan He Gong Ying Lian You Xian Gong Si (DOE 155); Shionter (DOE 157).

Disk Co. Ltd Utility Patents") (collectively the "GENIE-S Patents"), which were duly and legally issued by the United States Patent and Trademark Office. *See* Exhibit 1 of the Complaint [DE 1-1] and Exhibit 1 of the Declaration of Pamela Hui in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery ("Hui Decl.") [DE 10-2]. GENIE-S Products, which utilize the technology of, and inventions claimed in, at least a portion the GENIE-S Patents, are known for their innovative and superior performance. As a result, the GENIE-S Products are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from GENIE-S. Hui Decl., ¶ 7. Plaintiff has carefully monitored and policed the use of the GENIE-S Patents. *Id.*, ¶¶ 8, 11, 29. As a result of Plaintiff's efforts, GENIE-S Products are widely recognized and exclusively associated by consumers, the public, and the trade as being sourced from Plaintiffs. *Id.*, ¶ 7.

### B. Defendants' Infringing Acts

As alleged by Plaintiff, admitted by default, and established by the evidence submitted herewith, Defaulting Defendants operate and control e-commerce stores via third-party marketplace websites under their seller identification names and/or commercial Internet websites operating under their domain names as identified on the attached Amended Schedule A (the "Seller IDs"). They are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, sale, and import of copycat versions of the GENIE-S Products, which improperly utilize the technology of and inventions claimed in at least a portion of the GENIE-S Patents (the "Infringing Products"). *See* Compl., ¶¶ 26–51; Hui Decl., ¶¶ 9–15; *see also* relevant webpage captures from Defendants' Internet-based e-commerce stores and commercial websites operating under the Seller IDs infringing the GENIE-S Patents ("Defendants' Seller IDs") attached as Exhibit 1 to the Declaration of Leigh Salomon in Support of Plaintiff's Motion for Entry of

3

Final Default Judgment ("Salomon Decl.").

Further, as admitted by Defaulting Defendants through default, and at all times relevant, Defaulting Defendants have had full knowledge of Plaintiff's authority, through its granted licenses, to use the GENIE-S Patents and right to benefit from the goodwill associated with that intellectual property. *See* Compl., ¶ 45. Defaulting Defendants do not have, nor have they ever had, the right or authority to use the GENIE-S Patents for any purpose. *See* Hui Decl., ¶ 21. Despite their known lack of authority to do so, Defaulting Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, selling and importing their Infringing Products via the Seller IDs. *See* Compl., ¶¶ 28–32, 53–54; *see also* Hui Decl., ¶¶ 9–15.

Plaintiff's evidence demonstrates Defaulting Defendants are engaged in the promotion, advertisement, distribution, offering for sale, sale, and importing of goods infringing the GENIE-S Patents. Plaintiff investigated the promotion and sale of Infringing Products by Defendants through the Seller IDs. Hui Decl., ¶¶ 9–15. Plaintiff's investigation accessed Defaulting Defendants' Internet-based e-commerce stores operating under each of the Seller IDs, initiated orders for the purchase of various products infringing the GENIE-S Patents at issue in this action from each Defaulting Defendant, and requested each product to be shipped to an address in this District. *Id.* At the conclusion of the process, the detailed webpage captures and images of the Infringing Products where orders were initiated via Defendants' Seller IDs were sent to Plaintiff's representative for review. *Id.*

Plaintiff's representative reviewed and inspected the Infringing Products ordered from each of the Seller IDs, and by reviewing the e-commerce stores and websites operating under each of the Seller IDs, or the detailed webpage captures and images of the items infringing the GENIE-S Patents, determined the products were not genuine versions of Plaintiff's products. *Id.*

### C. Procedural Background

On February 18, 2025, Plaintiff filed its Complaint against Defendants. [DE 1]. On February 26, 2025, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order (the "Application"). [DE 10)]. On February 28, 2025, the Court issued a Sealed Order granting the Application (the "TRO"). [DE 12]. On March 13, 2025, the Court issued an Order granting Plaintiff's Motion to extend the TRO. [DE 14]. On April 4, 2025, the Court issued an Order replacing the TRO with a Preliminary Injunction (the "PI"). [DE 29]. The TRO and PI required, *inter alia*, any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms that are providing services for any of the Defendants, including but not limited to, Alibaba Group d/b/a Alibaba.com and Aliexpress.com ("Alibaba"), AllPay Limited ("AllPay"), Amazon Payment Systems, Inc. and Amazon.com, Inc. ("Amazon"), Coinbase Global, Inc. ("Coinbase"), Contextlogic, Inc. ("Wish"), eBay, Inc. ("eBay"), Lakala, LianLian Global t/as LL Pay U.S., LLC ("LianLian"), OFX Group ("OFX"), Paxful, Inc. ("Paxful"), PayEco, Payoneer, Inc. ("Payoneer"), PayPal, Inc. ("PayPal"), Ping Pong Global Solutions, Inc. ("Ping Pong"), SellersFunding, Shein.com ("Shein"), Shopify, Stripe, Inc. ("Stripe"), Temu.com ("Temu"), Union Mobile Financial Technology Co., Ltd ("Union Mobile"), Walmart.com ("Walmart"), World First UK Ltd. ("World First"), and their related companies and affiliates (together, the "Third Party Providers"), to identify and restrain all funds in Defendants' associated payment accounts, including all other financial accounts tied to, used by, or that transmit funds into, the respective Defendants' financial accounts, and divert those funds to a holding account for the trust of the Court. *See* Salomon Decl., ¶ 3. Subsequently, Plaintiff's counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order. *Id.*

The Court also authorized Plaintiff to serve the Summons, Complaint, and other subsequent filings in this matter upon Defendants via email and posting copies of the same on Plaintiff's designated service notice website. [DE 7]. Pursuant to the Court's Order, Plaintiff served Defendants by email and via http://genie-s-cases.com/case-25-cv-60315.html. *See* Salomon Decl., ¶ 4. The time allowed for Defaulting Defendants to respond to the Complaint has expired. *Id.*, ¶ 5. Defaulting Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.*, ¶ 6. To Plaintiff's knowledge, none of the Defaulting Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. *Id.*, ¶ 7. A Clerk's Default [DE 41] was entered against the Defaulting Defendants on April 24, 2025, as Defaulting Defendants failed to appear, answer, or otherwise plead to the Complaint, despite having been served.

Plaintiff now moves the Court to grant Final Default Judgment against the Defaulting Defendants.

### III. ARGUMENT

#### A. Default Judgment Should be Entered Against Defaulting Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defaulting Defendants and venue in this district are proper under Florida Statute § 48.193(1)(a)(2), § 48.193(1)(a)(1), and 28 U.S.C. § 1391 as Defaulting Defendants' infringement constitutes "tortious acts" and Defaulting Defendants direct business activities toward consumers throughout the United States, including within the State of Florida and this district, causing harm to Plaintiff's business within this jurisdiction through the Internet based e-commerce stores and websites operating under the Seller IDs. *See* Compl., ¶¶ 12–15.

##### 1. Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a).  *See* Fed. R. Civ. P. 55.  Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true.  *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)).  In this case, the Complaint, pleadings, and declaration filed in support of Plaintiff's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against the Defaulting Defendants.

Where there are multiple defendants, the "plaintiff must state in a motion for default judgement that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability."  *Adidas AG v. Adidasjeremycottitalia.eu*, No. 13-cv-62712, 2014 WL 1122017, at *2 (S.D. Fla. Aug. 14, 2014) (entering default judgement against all defendants even where plaintiff alleged joint and several liability, because all defendants defaulted).

Here, Plaintiff makes no allegations of joint and several liability against the Defaulting Defendants, who are the only Defendants remaining in this case.  The Complaint alleges, and the evidence establishes, that each Defaulting Defendant sold or offered to sell Infringing Products.  As explained more fully below, Plaintiff seeks monetary damages against each Defaulting Defendant for each Defaulting Defendants' willful infringement.  As a result, there is no risk of inconsistent liability.

        **2.**    **Factual Allegations Establish Defaulting Defendants' Liability.**

To establish patent infringement a plaintiff must establish that a defendant has made, used, sold, or offered for sale a product that meets at least one of the claims of the asserted patent.  35

U.S.C. § 271(a).  A product infringes a patented invention when the product "contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Ct. Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  Or, as one set of model patent jury instructions notes, "A [product] [method] directly infringes a patent if it is covered by at least one claim of the patent."  *See, e.g.*, NDCA Model Patent Jury Instructions, https://www.cand.uscourts.gov/wp-content/uploads/2019/12/NDCAL_Model_Pat_Jury_Inst_8-2017_updated_10-2019.pdf.

The well-pled factual allegations of Plaintiff's Complaint, including specifically those pled in Paragraphs 26–51 [DE 1], properly allege the elements for utility patent infringement. Moreover, the factual allegations in Plaintiff's Complaint, substantiated by the evidence submitted herewith, conclusively establish Defaulting Defendants' liability under the claim asserted in the Complaint.  Hui Decl., ¶¶ 9–15 (demonstrating that each Defendant has offered for sale, sold, and imported into the United States at least one product that meets each limitation of at least one claim of the GENIE-S Patents at issue).  Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defaulting Defendants.

    **B.**    **Plaintiff's Requested Relief Should Be Granted.**

        **1.**    **Entry of a Permanent Injunction Is Appropriate.**

Pursuant to the Patent Act, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  "[I]n a default judgment setting, injunctive relief is available.  Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction."  *Atmos Nation, LLC v. Pana Depot, Inc.*, No. 14-CIV-62620, 2015 WL 11198010, at *2 (S.D. Fla. Apr. 8, 2015); *see also Jackson v.*

*Sturkie*, 255 F. Supp. 2d. 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Moreover, even in a default judgment setting, injunctive relief is available. *See e.g.*, *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1222-23 (S.D. Fla. 2004). The Defaulting Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 35 U.S.C. § 283, this Court should permanently enjoin Defaulting Defendants from continuing to infringe the GENIE-S Patents.

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated here, and based upon the issuance of the TRO and PI entered in this matter, Plaintiff has carried its burden on each of the four factors, warranting permanent injunctive relief, as Defaulting Defendants have unlawfully used Plaintiff's intellectual property to make a profit. Accordingly, permanent injunctive relief is appropriate.

Plaintiff has carried its burden on each of the four factors, rendering permanent injunctive relief appropriate. First, Plaintiff is irreparably harmed. As alleged and supported by the declarations previously submitted, the Defaulting Defendants' acts of infringement have eroded Plaintiff's market for the GENIE-S Products and impacted Plaintiff's goodwill. *See* Hui Decl. ¶¶

28–32. Indeed, the Defaulting Defendants' Infringing Products cause consumer confusion, which weakens Plaintiff's credibility and reputation, resulting in a loss of unquantifiable future sales. *Id.*, ¶ 30  Moreover, the Infringing Products are in direct competition with the GENIE-S Products.  As a result, Plaintiff's market position is being irreparably damaged by Defendants' continued infringement.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude.").

The second factor favors a permanent injunction as well.  Since the Defaulting Defendants have failed to appear, Plaintiff does not have the ability to discover the full extent of monetary damages it could recover from the Defaulting Defendants to compensate Plaintiff for Defaulting Defendants' infringement.  Thus, there is no adequate remedy at law.  *Enpat, Inc. v. Budnic*, No. 6:11-CV-86-PCF-KRS, 2011 WL 1196420, at *4 (M.D. Fla. Mar. 29, 2011) (defendant's refusal to appear in the case "reinforces the inadequacy of a remedy at law and the irreparability of the harm absent an injunction").  Additionally, Plaintiff has no adequate remedy at law so long as the Defaulting Defendants continue to use the GENIE-S Patents in connection with the operation of the e-commerce stores under the Seller IDs because Plaintiff will have no control of the quality of the goods that could be associated with the GENIE-S Products.  An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if the Defaulting Defendants' infringing actions are allowed to continue.

The third factor—the balance of harm—also weighs in Plaintiff's favor and warrants the equitable remedy of a permanent injunction.  Plaintiff has a significant interest in enforcing its patent rights and in fact spend significant resources protecting and enforcing its intellectual property. Hui Decl., ¶¶ 8, 9, and 29.  Enjoining Defaulting Defendants is critical to prevent

hardship to Plaintiff from loss of sales and/or injury to Plaintiff's reputation and goodwill. By contrast, Defaulting Defendants face no hardship if they are prohibited from the infringement of Plaintiff's patents, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defaulting Defendants to prevent consumers from being misled by Defaulting Defendants' infringing products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defaulting Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Furthermore, as admitted by the Defaulting Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of the Defaulting Defendants' online activities, and (ii) the Seller IDs themselves are one of the means by which Defaulting Defendants further their infringing scheme and cause harm to Plaintiff. *See* Compl., ¶¶ 47–48. Therefore, to effectuate the injunction, all listings and associated images of goods infringing the GENIE-S Patents via the Seller IDs should be permanently removed by the applicable governing Internet marketplace platform operators and/or administrators. Without removing the listings and

11

associated images of goods infringing the GENIE-S Patents, the Defaulting Defendants will remain free to continue infringing Plaintiff's patents with impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the unlawful use of the GENIE-S Patents, and will continue to defraud the public by their illegal activities.  The Court's powers of equity can compel measures necessary to enforce an injunction against infringement.  *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defaulting Defendants have created an Internet-based infringement scheme and are profiting from the deliberate misappropriation of Plaintiff's rights.  Unless the listings and images of the Infringing Products are permanently removed, the Defaulting Defendants will be free to continue to defraud the public with their illegal activities.  Accordingly, the Court should eliminate the means by which the Defaulting Defendants conduct their unlawful activities to further prevent the use of these instrumentalities of infringement.

    **2.**  **Damages as to Utility Patent Infringement.**

Plaintiff's Complaint sets forth a cause of action for patent infringement under the Patent Act, 35 U.S.C. § 271.  Damages for patent infringement are governed by 35 U.S.C. § 284, which provides that "[u]pon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  Utility patent infringers may be liable for lost profits or a

reasonable royalty.  *See MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-CV-0581, 2022 WL 3367358, at *7 (S.D. Ohio Aug. 16, 2022) ("For utility patents, there are [t]wo alternative categories of infringement compensation: (1) the patentee's lost profits; and (2) the reasonable royalty" (cleaned up)); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) ("The two methods by which damages are usually calculated under § 284 are assessment of actual damages (the profits the patentee lost due to the infringement) or, if actual damages cannot be ascertained, determination of a reasonable royalty.").

"[T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  The Patent Act provides that "[u]pon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284.  These damages may be increased "up to three times the amount found or assessed." *Id.; see also Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 103 (2016).*  There is no "rigid formula" for awarding enhanced damages; a court has "discretion in meting out enhanced damages." *Halo,* 579 U.S. at 107.  In determining damages for patent infringement, "the focus is on compensating the patentee or the plaintiff for this injury." *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010). "[T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  Pursuant to 35 U.S.C. § 284, Plaintiff seeks to recover an award of lost profits, trebled for willful infringement.

As courts have noted in analogous cases involving design patent infringement, "after a plaintiff in a patent action submits admissible evidence of an infringer's gross profit," "it is the infringer's burden to submit admissible evidence to establish that other expenses and costs should be deducted from that profit." *Evriholder Prods. LLC v. Simply LBS Ltd. Co.*, No. 17-cv-4329, 2020 WL 7060336, at *9 (S.D.N.Y. Apr. 21, 2020). When calculating an infringer's profits, courts have held in similar contexts that, where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount. *See Chloe*, 2009 WL 2956827 at *5 (entering profits award for the entire revenue amount in trademark infringement case even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products [as opposed to other products not at issue in this case] or as to the costs incurred in acquiring and selling these products."); *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (calculating lost profits based on gross figures where defendant offered no evidence of cost of goods sold) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it.")); *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (placing burden on defendant to show that certain portions of its revenues were not obtained through infringement of plaintiff's marks).

Since Defaulting Defendants have chosen not to participate in these proceedings, Plaintiff has information regarding Defaulting Defendants' profits from the sale of Infringing Products only from the marketplace platforms. *See* Exhibit 2 to Salomon Declaration. Defaulting Defendants have failed to appear in this matter and have not produced additional documents or information (1) characterizing each of the transactions in their financial accounts; (2) other accepted payment

methods; or (3) other Internet stores that they may be operating.  As a result, Defaulting Defendants have not attempted to apportion gross receipts between infringing and not-infringing product sales, or to show any deductions.

Since the Defaulting Defendants have not met their burden of apportioning gross sales or showing any deductions, the Court should award damages in the form of lost profits based on the Gross Merchant Value ("GMV") provided by the marketplace platform, which is the sales price of infringing goods multiplied by the number of goods sold.  The information provided by the marketplace platforms for each of the Defaulting Defendants indicates that those amounts reach up to $364,279.98.[2]  Salomon Decl., ¶ 3.  A breakdown of the GMV by the Defaulting Defendant and Plaintiff's requested profit award under 35 U.S.C. § 284 is provided in the chart in Exhibit 2 to the Salomon Decl.  *Id.*

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defaulting Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated:  May 15, 2025

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8450
lsalomon@bsfllp.com

*Counsel for Plaintiff*
***GENIE-S INTERNATIONAL LTD.***

---

[2] For any Defaulting Defendants with a GMV of $0, Plaintiff does not seek damages, only injunctive relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that Boies Schiller Flexner LLP served the foregoing document to Defaulting Defendants via email to known email addresses and by posting the foregoing document on Plaintiff's Notice Website http://genie-s-cases.com/case-25-cv-60315.html, consistent with this Court's order authorizing alternative service. [DE 7]. The known emails for Defaulting Defendants are listed below.

/s/ Leigh Salomon
Leigh Salomon

## Amended Schedule A

| DOE | Seller Name | Email Address |
|---|---|---|
| 1 | Guangzhou Chengchuang Packaging Products Co., Ltd. | h16620024504@163.com |
| 2 | Jiangsu Delantai Glass Products Co., Ltd. | x15252169842@163.com |
| 3 | Jiangsu Yifan International Trade Co., Ltd. | 87245091@qq.com; admin@yifan-internation.com |
| 4 | Nantong Xinde Medical Packing Material Co., Ltd. | stella@ntxinde.com |
| 5 | Ningbo Sunwinjer Daily Products Co., Ltd. | 176172739@qq.com |
| 6 | Shaoxing Camil Packaging Co., Ltd. | sales01@camilpack.com |
| 7 | Ageless Beauty Care | 3012719838@qq.com |
| 9 | beijingchuangweifuxingkejiyouxiangongsi | pangweiyus@163.com |
| 11 | DABEL TRADING | hafezsaffron5@gmail.com |
| 12 | D-LOTUS | 343541550@qq.com |
| 14 | eStarpro | estarpro2018@hotmail.com |
| 16 | Fivexing | huangzichengyu@outlook.com |
| 17 | frsmghx | fengrongshangmaop@outlook.com |
| 18 | Good night department store | ww2537160963@163.com |
| 21 | Jiefuxin official store | 15177263950@qq.com |
| 22 | KayzonTech | kayzontechus@outlook.com |
| 30 | Shenzhen Censung International Trading Company | 47114514@qq.com |
| 31 | shuifenzh | shuifenzhin@outlook.com |

| DOE | Seller Name | Email Address |
|---|---|---|
| 32 | Skogfe | 2055048120@qq.com |
| 35 | walalala | wenhuifly@sina.com |
| 38 | YANGDOUS | yeyangdong@outlook.com |
| 41 | ZHAOMEI-US | zhaomei456@outlook.com |
| 43 | byomo-pi | mpn150000@gmail.com |
| 44 | chrismastore | ibensaidaguni@gmail.com |
| 46 | elijah_alvarbez | samuel_williavms@hotmail.com |
| 47 | fatwi56 | wiziafatiman@gmail.com |
| 48 | freeasy22 | easy22321@163.com |
| 49 | huohuashi02 | hefeihuohuashi02@163.com |
| 50 | imaxcity1002 | kkuai1357981@163.com |
| 51 | lalawenchang | doble12118791@aliyun.com |
| 52 | Little White Rabit Digital 2023 | 2256544746@qq.com |
| 54 | qubm6881 | ebaysnum1@gmail.com |
| 55 | tracey_beansley | grimm_feentress@hotmail.com |
| 57 | A ALLISON HOME | yucaoliuyang@163.com |
| 58 | admire | hejinpeng68@163.com |
| 60 | AOYIKANG | aoyikang1@163.com |
| 62 | ATSM | ate@ahtech.com.cn |
| 64 | Bag market store | wo441298785@163.com |
| 65 | BAGWORLD | hxc199542@163.com |
| 66 | Beautiful Face | Meizhuang202406@163.com |
| 69 | CXYaaa | cxy202420@163.com |
| 74 | Early Bird Peng | 1737074089@163.com |
| 75 | ELINOR | wangfengxian85@sina.cn |
| 77 | FANRAN | Franxyin24@outlook.com |
| 78 | FengLai | hukedianpu@163.com |
| 79 | Five Members | damili1688@foxmail.com |
| 82 | Good fortune Living | xuanqibaihuo001@163.com |
| 83 | Goviyar Makeup Tool | L-Zero21@outlook.com |
| 84 | GuteUnit Store | m005853@163.com |
| 86 | homiaobaihuo | huomiaocaizhuang@163.com |
| 89 | HSCommodity | suling111215@gmail.com |
| 92 | JHyitian | a18157974026@126.com |
| 98 | Lechay | quanqiumaiinc@163.com |
| 99 | Liberal order | xc95320202188@163.com |
| 100 | Lucky Grass | Lukeke555@163.com |
| 101 | luehe | fxj08153713@163.com |
| 104 | Mr Hu Department | hudonghua1025@163.com |

| DOE | Seller Name | Email Address |
|---|---|---|
| 105 | MUB Perfume Bottles | mubtf@mubtf.com |
| 107 | Onlylove-MW | qiyingsy@163.com |
| 109 | Pin Yi | py168888888@sina.com |
| 110 | QIAQU | A1139759108@163.com |
| 112 | QiBanHua | QIBANHUA9988@163.com |
| 113 | qushengbaihuo | huomiao_16@foxmail.com |
| 114 | Seibam | shkmetals@163.com |
| 115 | sentianbaihuo | zjgstmzp@163.com |
| 116 | SGrunxing | daxiong-yi@163.com |
| 117 | ShiAo | Zhangshein@163.com |
| 122 | Yi Qing | chenxxrt@163.com |
| 123 | YiYuan Perfume Bottle | yunranxsp@sina.com |
| 130 | YWJINGXUAN | YLL888@126.COM |
| 131 | YWourui | qdbag88@163.com |
| 132 | YWZF | burenmingjiupinming168@hotmail.com |
| 136 | Creek Crossing | 182020610@qq.com |
| 138 | Liff Home Life | 15177263950@163.com |
| 139 | MUFY MAKEUP BRUSH | 534990522@qq.com |
| 140 | Northern Moon | 2806386262@qq.com |
| 141 | PDStar | zxt50330@gmail.com |
| 144 | Cainana | shaopaipou9153@163.com |
| 145 | dong xu | dongxuhp@163.com |
| 147 | foshanshilingxuanlongshangmao | gemobaxi70@126.com |
| 148 | Hand Jet | wongjunjay@163.com |
| 150 | LINKALL | kellslee@outlook.com |
| 151 | LUCKY COKIE | aorichenus@163.com |
| 152 | LUNUAOE | hgruue@163.com |
| 153 | MoHern | wangliucheng@mohern.com |
| 156 | shaoshanshizicong | maxinepuga78@outlook.com |
| 158 | Uralili Co., Ltd | sangziyu123@outlook.com |
| 159 | xiangtancikeli | sharondehnert9992@outlook.com |
| 160 | yunmujia09 | ggtv3326@outlook.com |